1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

KELLEY C.,[1]

Case No. 24-cv-08055-TSH

8

Plaintiff,

9

v.

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

10

SSA COMMISSIONER,

Re: Dkt. Nos. 10, 14

11

Defendant.

12
13
14

## I.    INTRODUCTION

15

Plaintiff Kelley C. moves for summary judgment to reverse the Social Security

16

Administration's decision to deny her claim for disability benefits under the Social Security Act,

17

42 U.S.C. § 401 et seq.  ECF No. 10.  Defendant cross-moves to affirm.  ECF No. 14.  Pursuant to

18

Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated

19

below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.[2]

20

## II.    PROCEDURAL HISTORY

21

On August 9, 2022, Plaintiff filed an application for Social Security disability insurance

22

benefits, stating a disability onset date of February 19, 2021.  Administrative Record (AR) 217,

23

222.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before

24

an Administrative Law Judge (ALJ).  AR 108, 115-16, 125.  An ALJ held a hearing on June 21,

25

2021, and issued an unfavorable decision on March 5, 2024.  AR 17-31, 36-83.  The Appeals

26

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case Management of the Judicial
Conference of the United States.

27

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 4,
5.

28

1  Council denied Plaintiff's request for review on October 9, 2024. AR 1-3. Plaintiff now seeks

2  review pursuant to 42 U.S.C. § 405(g).

3  ### III.    ISSUES FOR REVIEW

4  Plaintiff raises five issues on appeal: (1) the ALJ erred in weighing her subjective

5  complaints; (2) the ALJ failed to fully and fairly develop the record; (3) the ALJ did not accurately

6  weigh testimony of Plaintiff's husband; (4) the ALJ gave improper weight to a non-examining

7  medical consultant; and (5) the vocational witness testimony in response to the ALJ's hypothetical

8  was of no evidentiary value.

9  ### IV.    STANDARD OF REVIEW

10  42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

11  to deny disability benefits, but "a federal court's review of Social Security determinations is quite

12  limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's

13  decision will be disturbed only if it is not supported by substantial evidence or if it is based on the

14  application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but

15  only "such relevant evidence as a reasonable mind might accept as adequate to support a

16  conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard,

17  which is "not high," the Court looks to the existing administrative record and asks "whether it

18  contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned

19  up).

20  The Court "must consider the entire record as a whole, weighing both the evidence that

21  supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

22  simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d

23  995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility,

24  resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation

25  omitted). If "the evidence can reasonably support either affirming or reversing a decision," the

26  Court must defer to the ALJ's decision. *Id.* (citation omitted).

27  Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is

28  harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that,

United States District Court
Northern District of California

2

despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since May 1, 2017. AR 19.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe

1   impairment: "degenerative disc disease of the lumbosacral spine with radiculopathy and history of

2   three spinal surgeries (20 CFR 404.1520(c))."  AR 19.

3          At step three, the ALJ evaluates whether the claimant has an impairment or combination of

4   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

5   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

6   describe impairments that are considered "to be severe enough to prevent an individual from doing

7   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

8   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

9   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

10  medical criteria.  An impairment that manifests only some of those criteria, no matter how

11  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

12  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

13  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

14  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

15  did not have an impairment or combination of impairments that meets the listings.  AR 19-20.

16         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

17  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

18  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

19  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

20  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

21  it." 20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

22  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

23  determined Plaintiff has the RFC to

24              perform light work as defined in 20 CFR 404.1567(b) except the
               claimant can/is further limited as follows:
25
               • Can lift and carry, as well as push and pull 20 pounds occasionally
26             and 10 pounds frequently.

27             • Sit 6 hours, and can stand and/or walk 4 hours in an eight-hour
               workday (allowing the claimant to sit/stand at will up to these
28             limitations).

United States District Court
Northern District of California

• Never climb ladders, ropes and scaffolds. Occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

• Never work at unprotected heights, never work with exposed moving mechanical parts. Avoid concentrated exposure to extreme cold and vibration.

AR 20.  Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a leasing manager, bookkeeper, and office worker/manager.  AR 28.  As such, the ALJ determined Plaintiff was not under a disability, as defined by the Social Security Act.  AR 30-31.

If the ALJ did not make an ultimate finding as to disability at step four, the analysis would proceed to step five, when the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,3 or on the testimony of a vocational expert.  Ford, 950 F.3d at 1149 (citation omitted).  An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[3]  Id.  Here, the ALJ made an alternative finding at step five that Plaintiff could perform the requirements of representative occupations such as office helper (DOT # 239.567-010, light unskilled; with 3,250 positions nationally); parts assembler (DOT # 706.684-022, light unskilled, with 12,000 positions nationally); sorter (DOT # 222.687-022, light unskilled, with 60,000 positions nationally); mail clerk (DOT # 209.687-026, light unskilled, with 6,000 positions nationally), order clerk, clerical sector (DOT # 249.362-026, sedentary unskilled, with 105,000 positions nationally); appointment setter (DOT # 237.367-010, sedentary unskilled, with 140,000 positions nationally); order clerk, food and beverage sector (DOT # 209.567-014, sedentary unskilled, with 10,000 positions nationally).  AR 29-30.

---

[3] The Dictionary of Occupational Titles classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for [vocational experts] to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.")

1

**B.    Subjective Complaints**

2     Plaintiff alleges disability due to "the combined effects of her severe lumbar spine

3 impairments which are now status post three extensive surgeries."  AR 375.  These surgeries were

4 laminectomies/diskectomies with instrumentation/hardware removal and fusion in December

5 2011, April 2017, and February 2021.  AR 375-76.  They were followed by several months of

6 physical therapy as well as multiple lumbar epidural steroid injections.  AR 375-77.  Despite the

7 surgeries and treatment, Plaintiff maintains "severe pain and limitation ultimately prevented her

8 from sustaining work at any level and have continued to greatly interfere with her day-to-day life."

9 AR 377.

10     In response to ALJ's question about why she cannot work, Plaintiff testified:

> Unfortunately now with my current medical state I am not able to do
> extended periods of any position whether that be the sitting or
> standing or moving around.  Laying down is kind of my, my basic
> state for a lot of my, my time, and on a heating pad.  I had
> complications from my last surgery that I went in with a set of some
> issues and, and some nerve problems and due to a complication from
> that surgery I came out with a different set of issues that were -- made
> my condition worse for me and physically worse on me and those
> have not rendered themselves any change in that timeframe, and my
> doctors don't foresee that there will be a change in that condition.  So
> I have an extremely sharp, almost like a stabbing feeling that goes
> from the lower back down to the back of my left knee that is constant.
> I have no relief from that all day and then I'm, I'm numb on the front
> half of my pelvic area, so literally straight down the middle and off to
> the left and that whole side of my hip and pelvic area it's numb from
> the nerves that were affected from the complications from the surgery.
> And because of these issues and just how much pain I have in my
> back that's accumulated from three fusion surgeries I'm just never
> very comfortable.  I can't, I can't sit for very long, I can't stand for
> very long, even if I'm laying down I'm constantly having to move
> from my side to my other side and flipping and flopping.  It affects
> my sleep, it affects my mental state.  It's definitely made my
> concentration very, very difficult.  I used to be able to push through
> the pain and kind of through tips and, and things that I've learned with
> therapy and like through the chronic pain clinic a couple times learned
> how to not have that be the forethought of my attention, but I was able
> to live a more -- quality of life.

25 AR 55-56.  When the ALJ asked about therapies and any relief, Plaintiff responded: "I'd gone

26 through chronic pain clinic prior to this last surgery and that's more coping with the pain and, and

27 ways of dealing with that.  I did do months of physical therapy because I've already had the

28 training of ways to try to meditate and, and to work with the pain.  The physical therapy really did

United States District Court
Northern District of California

1    not help, no." AR 57. When asked to describe a typical day, Plaintiff responded:

> Again sitting and standing for significant periods of time are, are my most challenging, so we've changed out furniture in my home so that I have like an adjustable frame for my bed. I have, you know, fully reclining couches. My son now is pretty independent as far as being able to play and do his, his own thing with his toys and whatnot. So for -- on average I get up in the morning and my son sits on the bed with me. I feed him. . . . So we do that upstairs on the bed with me, while I'm on a heating pad. And depending if it's a school day or not after that I, you know, I'll drop him off at school and then I come home and I'm back to laying down until I have to go get him at, at 11:30. So I get about, you know, two and a half-hour or two hours probably once I drop him off and time to go pick him up, break three days a week. Once I pick him up we come home and I'm on the couch and he's, he has pretty easy food schedule. . . He'll bring his toys over to me and we'll play and interact with him, I watch him, I play with my kid, we, you know, I do hustle over and sit with him for a little bit at the table and we'll practice some arts and crafts or we practice his writing or we sit and we're reading our book. On days that I am feeling a little bit better and I'm not as in, in as much pain I might drive him over to the park and I'll sit on the bench and let him play on the, the playground. And then we come home and he takes a nap at 3:00. I'm laying down again on my bed on the heating pad until he wakes up about 5:00 or so and then I am downstairs. I get him dinner and once my husband comes home about 7:30 or so he, he takes over my son and I go back upstairs and lay down once again.

15    AR 58-59.

16          The ALJ found Plaintiff's lumbar spine impairments to be severe and that they could

17    reasonably be expected to cause the type of alleged symptoms; but that her statements concerning

18    the intensity, persistence and limiting effects of these symptoms were not consistent with the

19    medical evidence and other evidence in the record. AR 19, 26. Plaintiff argues the ALJ erred

20    because the record supports her statements. Pl.'s Mot. at 3-6.

21          **1.    Legal Standard**

22          The Ninth Circuit has "established a two-step analysis for determining the extent to which

23    a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

24    Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical

25    evidence of an underlying impairment which could reasonably be expected to produce the pain or

26    other symptoms alleged." *Id.* "Second, if the claimant meets this first test, and there is no

27    evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

28    symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (cleaned up).

"At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation and internal quotations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (citations and internal quotation marks omitted).  The clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

### 2.    Analysis

The Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony, and substantial evidence supports the ALJ's decision.  First, the ALJ properly found that Plaintiff's allegations of disabling symptoms were not supported by the medical evidence. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  This could not be the ALJ's sole reason for rejecting Plaintiff's statements about symptoms, but it was a factor the ALJ was required to consider.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"); *Reyes v. Berryhill*, 716 Fed. App'x 714, 714 (9th Cir. 2018) (ALJ properly concluded plaintiff's testimony was not corroborated by normal medical findings).

Since Plaintiff's surgery in April 2017, the ALJ detailed that she generally received conservative treatment, including physical therapy, injections and medication management, that resulted in symptom improvement.  AR 23-26.  For example, Plaintiff reported in May 2017 that her sciatica was resolved, and in June 2017 she endorsed complete resolution of her radiculopathy with no lingering leg pain and that back pain was improving with physical therapy.  AR 23-24 (citing 669, 674, 676).  After an October 2017 motor vehicle accident exacerbated her symptoms, Plaintiff's physical therapist noted she was ambulating with a single-point cane with moderate antalgia, but this began to abate as of February 2018 with continued physical therapy and a lumbar epidural steroid injection, and she had discontinued her use of a cane by March 1, 2018.  AR 625-28, 636, 643-48.  During this period, Plaintiff's treating provider recommended only "conservative management."  AR 24 (citing 643-44).

The ALJ noted that Plaintiff gave birth at the end June 2019 and reported some back pain during her pregnancy and during the early post-partum stages, yet the record did not establish a return to regular orthopedic or physical therapy treatment until July 2020.  *Id.* (citing 553-54, 562, 583-84, 594).  In that July 2020 examination, the treating provider noted Plaintiff reported she was having pain and trouble strengthening, yet her examination revealed she was in no acute distress, had full range of motion with some pain, and neurological functional strength was intact.  *Id.* (citing 553-54).  The ALJ also noted Plaintiff's physical examinations consistently showed some pain/discomfort and tightness with range of motion, but she maintained the ability to complete these motions, as well as her intact strength.  AR 26 (citing 1504-06).  Although Plaintiff underwent an additional surgery on February 10, 2021, by June 2021 she reported making good progress with the stationary bike recommended by her providers, as well as pool therapy.  *Id.* (citing 433, 501).

The ALJ also cited to records from November 2021 in which Plaintiff reported she was feeling stronger, doing well with her at home exercise program, and that she had been able to do all her exercises and had advanced to plank exercises.  *Id.* (citing 404-05).  The ALJ noted the record did not document any further physical therapy between this time and June 30, 2022 (Plaintiff's last insured date).  *Id.*  The ALJ also noted that, in her one-year follow-up visit with

1    her surgeon in March 2022, Plaintiff reported she was successfully managing symptoms with

2    medication, and she reported in July 2022 that she was still getting benefit from medication

3    without side effects.  AR 25 (citing 392, 396).  Such "evidence of medical treatment successfully

4    relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867,

5    876 (9th Cir. 2017).

6         As to the medical opinions of record, the state agency administrative medical findings are

7    the only findings in the record detailing Plaintiff's limitations.  The initial-level state agency

8    medical consultant, E. Trias, M.D., found Plaintiff "could perform at the medium exertional level

9    (lifting/carrying fifty pounds occasionally and twenty five pounds frequently; sitting six hours out

10   of an eight-hour workday; standing/walking six hours out of an eight-hour workday; and

11   pushing/pulling up to the limits of lifting/carrying) with a further limitation of no more than

12   frequent climbing of stairs and ramps, ladders, ropes, and scaffolds, stooping, and crawling."  AR

13   27 (citing AR 84-97).  On the other hand, the reconsideration-level state agency medical

14   consultant, L. DeSouza, M.D., found Plaintiff "could perform at the light exertional level

15   (lifting/carrying twenty pounds occasionally and ten pounds frequently; sitting six hours out of an

16   eight-hour workday; standing/walking six hours out of an eight-hour workday; and

17   pushing/pulling up to the limits of lifting/carrying) with a further reduction of standing/walking to

18   four hours out of an eight-hour workday (with an allowance to alternate sitting and standing for 25

19   seconds every hour to relieve low back pain), with no climbing of ladders, ropes, and scaffolds, no

20   more than occasional climbing of stairs and ramps, kneeling, crouching, and crawling and no more

21   than frequent balancing.  The claimant must also avoid even moderate exposure to hazards."  *Id.*

22   (citing AR 100-07).  The ALJ found Dr. DeSouza's opinion, which calls for greater limitations

23   than Dr. Trias's opinion, "is more persuasive as it is more consistent with the claimant's

24   statements of her activities (to providers if not in her allegations)[.]"  AR 28.  In fact, the ALJ

25   found Plaintiff more limited than Dr. DeSouza's opinion, finding she could occasionally balance;

26   should avoid concentrated exposure to extreme cold and vibration; and could sit/stand at will.  AR

27   23, 28.  Plaintiff points to no other opinions in support of her argument.  *See Smartt*, 53 F.4th at

28   498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective

United States District Court
Northern District of California

10

testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis omitted).

The ALJ also considered Plaintiff's activities of daily living.  AR 26; 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ noted Plaintiff reported she "lives on her heating pad," but she also stated she traveled to her mother's home to assist her, cared for her son, attended multiple birthday parties over a single weekend, performed a broad array of physical therapy exercises including stationary bike use and water therapy, did household chores, went shopping, and drove more than an hour at a time.  AR 26-27 (citing 334-337; 392, 396, 407, 421-22, 425, 433-35, 551-52, 1478-79).  The ALJ also noted Plaintiff exercised by power walking for 90 minutes and riding a bike cruiser.  AR 27 (citing 551-52).  "Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113; *see Rollins*, 261 F.3d at 857 ("The ALJ also pointed out ways in which [claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week.").

The ALJ also noted Plaintiff identified her occupation as a stay-at- home mother, her treatment goal was to be "an active mom," and disclosed to her providers that the family was under some financial strain with no alternative childcare or other support options.  AR 26 (citing AR 406, 430, 443, 1478-79).  The ALJ found these statements "suggest that the claimant's family may have determined that the claimant will provide primary childcare, which may furnish a non-disability explanation for the claimant's forbearance from substantial gainful activity in the workforce."  *Id.*; *see Fennell v. Berryhill*, 721 Fed. App'x 652, 655 (9th Cir. 2018) ("her ability to care for her young son is inconsistent with her allegation that she spends most days lying down and doing nothing"); *Back v. Colvin*, 653 Fed. App'x 550, 552 (9th Cir. 2016) ("some record evidence suggested that family pressures and concerns about parenting—as opposed to debilitating pain—motivated [claimant] to leave full-time employment").

Plaintiff argues the ALJ's reasons for rejecting her subjective complaints "did not rise to the level of clear and convincing."  Pl.'s Mot. at 3.  She argues the ALJ's "apparent attempt to

penalize [her] for being able to engage in prescribed PT exercises is questionable at best." *Id.* at 4. However, the clear and convincing standard "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. Although Plaintiff highlights select pieces of evidence to argue she was more limited than the ALJ determined, it is not the Court's role to second guess the ALJ's conclusions or substitute its judgment for the ALJ's. *See Ford*, 950 F.3d at 1149 ("the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities'") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). So long as substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints, a reviewing court will "not engage in second-guessing." *Thomas*, 278 F.3d at 959; *see Guillen v. Comm' r of Soc. Sec.*, 232 F. App'x 699, 701-02 (9th Cir. 2007) (rejecting claim where there was some evidence supporting the need for more than three to five bathroom breaks per eight-hour shift, but ALJ had reasonably found the claimant's subjective complaints not fully supported).

In sum, the ALJ provided clear and convincing reasons for discounting Plaintiff's statements about her alleged symptoms and limitations. Because the ALJ's findings were reasonable and well supported by substantial evidence in the record, the Court must affirm, even if other interpretations of the evidence are possible. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (quoting *Burch*, 400 F.3d at 679).

## C.    Whether the ALJ Fully and Fairly Developed the Record

Plaintiff argues the ALJ failed to fully and fairly develop the record because she "relied on multiple reasons for discounting [Plaintiff's] subjective complaints without so much as asking a single question about those concerns." Pl.'s Mot. at 6. She notes the ALJ asked her why she couldn't work, asked about her surgeries, asked if there were any benefits from therapies/treatments, and asked her to describe a typical day, but she did not ask "a single question about [her] traveling to her mother's, or about birthday parties, PT exercises, or anything else listed. If the ALJ had concerns or needed clarification, we were present to provide it. The ALJ simply chose not to ask." *Id.* at 7.

1       "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly

2   and to ensure that the claimant's interests are considered, even when the claimant is represented by

3   counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "The ALJ is not a mere umpire

4   at such a proceeding: it is incumbent upon the ALJ to scrupulously and conscientiously probe into,

5   inquire of, and explore for all the relevant facts." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925,

6   930 (9th Cir. 2014) (cleaned up). This duty is triggered "when there is ambiguous evidence or

7   when the record is inadequate to allow for proper evaluation." *Mayes*, 276 F.3d at 459–60.

8       There is no indication the record was inadequate for the ALJ to consider Plaintiff's history

9   of and treatment for back pain. Medical records in the transcript explain that Plaintiff had been

10  treated for back pain, and the ALJ specifically found she was severely impaired by degenerative

11  disc disease of the lumbosacral spine. The ALJ discussed Plaintiff's back pain and medication

12  and treatment for that pain in the decision. *See Abrew v. Astrue*, 303 Fed. App'x 567, 569 (9th

13  Cir. 2008) ("The ALJ did not err by failing to develop the record further because the ALJ

14  evaluated [claimant's] testimony, lay testimony and at least four physician's reports and because

15  '[t]he ALJ did not indicate that he found the record insufficient to properly evaluate the evidence,'

16  obviating any need to develop the record") (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.

17  2001)).

18      While Plaintiff contends the ALJ failed to develop the record fully and fairly by not asking

19  about any perceived inconsistencies between her statements and the other evidence in the record,

20  identifying and resolving such conflicts is the ALJ's responsibility. To the extent the evidence of

21  record is conflicting, as it is here in parts, the Court defers to the ALJ to resolve any conflicts. *See*

22  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the

23  ALJ" to resolve conflicts and ambiguities in the record); *Batson v. Comm'r of Soc. Sec. Admin.*,

24  359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ resolves conflicts in the medical

25  opinions). While Plaintiff argues the ALJ ignored opportunities during her and her husband's

26  testimony to ask about possible areas that the ALJ was concerned about, the Court considers this

27  an invitation to reweigh the evidence and substitute its judgment for that of the ALJ, something

28  the Court cannot do. *See Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir.

United States District Court
Northern District of California

1   1995) ("If the evidence can reasonably support either affirming or reversing the Secretary's

2   conclusion, the court may not substitute its judgment for that of the Secretary."); *Rimando v.*

3   *Comm'r of Soc. Sec. Admin.*, 2022 WL 4113592, at *19 (D. Ariz. July 15, 2022), *report and*

4   *recommendation adopted*, 2022 WL 3443679 (D. Ariz. Aug. 17, 2022) ("It is specious for counsel

5   to contend that the ALJ failed a duty to question Plaintiff about a few specific activities that the

6   ALJ later cited as reason, in part, to find Plaintiff's testimony less than persuasive, when counsel

7   is certainly well aware that daily activities are frequently cited in ALJ decisions as inconsistent

8   with testimony alleging totally disabling impairments.").

9          In sum, the record demonstrates the ALJ provided Plaintiff with a full and fair hearing and

10  that there was sufficient and adequate evidence in the overall record for the ALJ to rely on in

11  adjudicating Plaintiff's disability claim.  As such, there was no duty to further develop the record.

12  **D.      Lay Witness Testimony**

13         Plaintiff's husband testified at the March 5, 2024 hearing as to the period between the

14  Plaintiff's February 2021 surgery and her June 2022 date last insured.  AR 69-74.  In terms of

15  Plaintiff's functioning, he testified: "It was, it was very limited.  We have open stairs in our house

16  and it was very difficult for her to get up and down the stairs to the point where at times I would

17  have to help her up the stairs.  She cannot carry anything up and down the stairs, if we had laundry

18  to do she couldn't carry the laundry, she couldn't carry a vacuum up and down the stairs, anything

19  like that.  It got to a point where it was difficult enough where she couldn't come from the outside

20  to the inside without having to brace herself against me to go up four stairs from the outside into

21  our house."  AR 70.  He also testified about how he assisted Plaintiff with their son: "Absolutely,

22  absolutely.  She could not lift him in and out of a crib and so that was all me.  When she wanted to

23  play with him I would have to take him either off the couch onto the ground or onto the -- from the

24  ground onto the couch or from the ground onto the bed or anything like that.  It was a huge burden

25  for her to even attempt to try to lift him.  She couldn't bathe him, I had to do all the bathing, in the

26  shower, in the tub, lifting him up."  AR 71.  He also testified to how often Plaintiff had to rest and

27  lie down during the first year following the February 2021 surgery: "Almost 100% of the time

28  when I was home.  Any time I got a chance to come home it was a relief for her and she'd have to

United States District Court
Northern District of California

14

come upstairs and lay down on the heating pad and be as horizontal as possible.  Even sitting downstairs on a couch, on her recliner it couldn't get fully, you know, the recliner doesn't go fully horizontal, so sitting on the couch was a relief but it was not a bigger relief as coming upstairs on the bed.  And so every time I was home, every time I was home it was she was right upstairs laying down trying to get as much pain relief as she could." AR 72-73.  He testified that Plaintiff's need to rest and for assistance continued through to the present time: "Again it's still even to this day it's almost 100% of the time that I'm home she comes upstairs and lays down and takes a rest. I try to leave work in the middle of the day when I have a prep period as much as I can to give her relief.  I go from teaching to coaching, we end our -- I end my teaching job at 3:15 and then I don't start coaching until 5:00.  I try to run home in between then so that she can come upstairs and lay down for 45 minutes or an hour and then before I have to go again.  Just any kind of relief and all-day Saturday and all day Sunday she's up here and I have, I have our son."  AR 73-74.

The ALJ described Plaintiff's husband's testimony but did not articulate any reason for rejecting it.  AR 23.  Plaintiff argues the ALJ erred because his testimony provides further support for her own testimony and shows that the ALJ's findings were not based on substantial evidence.  Pl.'s Mot. at 7-8.  Defendant counters that under the revised regulations "an ALJ is not required to specifically address nonmedical, i.e., lay witness evidence."  Def.'s Mot. at 9.  Alternatively, Defendant argues that any error in failing to give germane reasons for rejecting the lay witness testimony was harmless because the ALJ properly considered and rejected Plaintiff's subjective symptom testimony, which was similar to the lay witness testimony.  *Id.* at 11-12.

### 1.    **Legal Standard**

"It is unsettled whether an ALJ is still required to consider lay witness evidence under the revised regulations."  *Crummett v. King*, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025) (citing *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022)).  However, in the absence of Ninth Circuit guidance, courts in this circuit have found the new regulations still require an ALJ to at least consider lay witness testimony.  *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6

(D. Ariz. Sept. 21, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

Still, the new regulations provide "that an ALJ is 'not required to articulate how [he] considered

evidence from nonmedical sources.'" *Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir.

Oct. 20, 2023) (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (alterations in original).

### 2.    Analysis

There is no dispute that the ALJ considered but did not articulate how she evaluated

Plaintiff's husband's testimony.  However, in light of recent Ninth Circuit guidance, the Court

finds the ALJ was not required to articulate germane reasons for her evaluation of such lay witness

testimony.  *See Trogdon v. O'Malley*, 2024 WL 3949081, at *1 (9th Cir. Aug. 27, 2024) ("ALJ did

not err in discounting the lay witness statement . . . without articulating germane reasons" because

"under the revised regulations applicable to this claim, the ALJ is 'not required to articulate how

[he] considered evidence from nonmedical sources.'") (quoting 20 C.F.R. § 404.1520c(d)).

Even if the ALJ were required to articulate germane reasons, the Court finds any failure to

do so is harmless.  Because the ALJ "provided clear and convincing reasons for rejecting

[Plaintiff's] own subjective complaints, and because [her husband's] testimony was similar to such

complaints, it follows that the ALJ also gave germane reasons for rejecting [his] testimony."  *See*

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our

conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own

subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it

follows that the ALJ also gave germane reasons for rejecting her testimony."); *De Mello v.*

*Kijakazi*, 2022 WL 17583054, at *1 (9th Cir. Dec. 12, 2022) ("[A]ny claimed error was harmless

because, given the similarity between [the lay witness's testimony] and [the claimant's] testimony,

the lay testimony did not alter the ultimate nondisability determination.") (cleaned up); *Jacob v.*

*Berryhill*, 756 F. App'x 709, 711-12 (9th Cir. 2018) ("[A]ny error was harmless" in discounting

the lay witness testimony because the ALJ's reasons for rejecting the claimant's testimony applied

with equal force to the lay witness).

Accordingly, the Court finds the ALJ did not commit harmful error in her consideration of

Plaintiff's husband's testimony.

**E.    Non-Examining Medical Consultant**

Plaintiff next argues the ALJ gave improper weight to the non-examining medical consultants' opinions.  Pl.'s Mot. at 8-9.

On November 3, 2022, at the initial determination stage, state agency medical consultant E. Trias, M.D. found Plaintiff could perform at the medium exertional level (lifting/carrying fifty pounds occasionally and twenty-five pounds frequently; sitting six hours out of an eight-hour workday; standing/walking six hours out of an eight-hour workday; and pushing/pulling up to the limits of lifting/carrying) with a further limitation of no more than frequent climbing of stairs and ramps, ladders, ropes, and scaffolds, stooping, and crawling.  AR 84-97.  On July 6, 2023, at the reconsideration stage, state agency medical consultant L. DeSouza, M.D. found Plaintiff could perform at the light exertional level (lifting/carrying twenty pounds occasionally and ten pounds frequently; sitting six hours out of an eight-hour workday; standing/walking six hours out of an eight-hour workday; and pushing/pulling up to the limits of lifting/carrying) with a further reduction of standing/walking to four hours out of an eight-hour workday (with an allowance to alternate sitting and standing for 25 seconds every hour to relieve low back pain), with no climbing of ladders, ropes, and scaffolds, no more than occasional climbing of stairs and ramps, kneeling, crouching, and crawling and no more than frequent balancing, and that Plaintiff must also avoid even moderate exposure to hazards.  AR 100-07.  The ALJ found Dr. DeSouza's opinion was more persuasive because it was more consistent with Plaintiff's statements of her activities than the less restrictive prior administrative medical finding of Dr. Trias.  AR 27-28.

Plaintiff argues Dr. DeSouza's opinion was not consistent with and supported by the full overall record, and the ALJ erred in giving the greatest weight to this opinion.  Pl.'s Mot. at 9.  While the ALJ noted that Dr. DeSouza's opinion was not consistent with Plaintiff's own testimony, Plaintiff argues the ALJ's analysis was not based on a full reading of the record when discussing her statements to her providers.  She argues the ALJ "essentially cherry picked statements from [her] records instead of considering the full context of the treatment records and [her] specific complaints of ongoing pain and limitation."  *Id.*

1

**1.      Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods*, 32 F.4th at 791-93 (embracing the Commissioner's new regulatory framework for evaluating medical opinions).  The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians.  *See id.* at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").

Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be").  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

United States District Court
Northern District of California

United States District Court
Northern District of California

## 2.     Analysis

The Court finds the ALJ properly considered and discussed supportability and consistency when she assessed the persuasiveness of the prior administrative medical findings.  In considering the record, the ALJ found Plaintiff's range of activities of daily living were inconsistent with her allegations of work preclusive symptoms, but consistent with many of her statements of activities to providers and generally consistent with Dr. DeSouza's findings.  AR 26-27.  For example, the ALJ noted Plaintiff was able to do her physical therapy exercises five to seven days per week, able to ride a stationary bike recommended by providers as well as pool therapy, could power walk for 90 minutes and ride a bike cruiser short distances, could drive up to 1.25 hours before experiencing numbness, engaged in household chores and shopping, traveled to her mother's house to assist her, and took trips out of town.  AR 27 (citing AR 443, 551-52, 1478-79).  The ALJ's RFC findings regarding physical limitations were consistent with most of Dr. DeSouza's findings except that the ALJ found Plaintiff more limited in finding she could occasionally balance; should avoid concentrated exposure to extreme cold and vibration; and could sit/stand at will.  AR 23, 28.  The ALJ made clear that the RFC determination gave "greater leeway in determining the frequency and duration of her bouts of stretching by allowing her a sit/stand option that could accommodate up to four hours of standing/walking as well as identifying jobs that can performed within the parameters of the sedentary exertional level."  AR 28.  The ALJ's overall findings regarding Dr. DeSouza's findings were consistent with the current regulatory scheme and supported by substantial evidence.

While Plaintiff disagrees with the ALJ's interpretation of Dr. DeSouza's findings and the record, even if her alternative interpretation of the record is reasonable, the existence of an alternative interpretation of the evidence does not mean that the ALJ erred.  *See Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").  While Plaintiff argues the ALJ "essentially cherry picked statements" from the record, the administrative medical findings are the only findings in the record detailing Plaintiff's limitations, and the ALJ's RFC determination was more limited than their findings.  *See Jones v. Berryhill*, 720 Fed. App'x 851, 853 (9th Cir. 2017) (reasoning "the ALJ did

United States District Court
Northern District of California

1    not cherry-pick isolated examples of improvement," when "[t]he instances the ALJ pointed to

2    spanned several months"); *see Smith v. Berryhill*, 752 Fed. App'x 473, 475-76 (9th Cir. 2019)

3    ("Smith correctly notes that fibromyalgia symptoms can wax and wane, but the ALJ did not

4    cherry-pick the medical record and it contradicts several of her symptom complaints.").  As the

5    trier of fact, the ALJ's findings are entitled to deference.  *See Ford*, 950 F.3d at 1159 ("Our review

6    of an ALJ's fact-finding for substantial evidence is deferential, and '[t]he threshold for such

7    evidentiary sufficiency is not high'") (quoting *Biestek*, 587 U.S. at 102).  Accordingly, the Court

8    finds the ALJ's decision must be affirmed.

9    **F.    Vocational Expert**

10          At the administrative hearing, the ALJ presented the following hypothetical:

11                   In the first hypothetical please assume a hypothetical individual the
      Claimant's age and education and the past jobs you've described, and
12                   assume that this person has a residual functional capacity to perform
      less than a full range of light work. In this hypothetical the person can
13                   sit for six or more hours and can stand or, and/or walk for six hours
      in an eight-hour workday. This person can never climb ladders, ropes
14                   or scaffolds, this person can occasionally climb ramps and stairs,
      occasionally balance, occasionally stoop, kneel, crouch and crawl,
15                   this person can never work at unprotected heights, should never work
      with exposed moving mechanical parts, this person should avoid
16                   concentrated exposure to extreme cold and to vibration.

17    AR. 76.  In response, the expert testified the person could perform all of Plaintiff's past relevant

18    work as a leasing manager, auto rental clerk, dental orthodontist scheduler/coordinator,

19    bookkeeper, and office manager, well as other positions that exist in the national economy.  AR

20    75-76.

21          The ALJ then asked if a person with the same limitations "but with a sit/stand option just

22    four hours standing and standing and walking up to a total of that in four hours of an eight-hour

23    workday" could still perform Plaintiff's past work.  AR 77.  The expert responded the person

24    could still work as a leasing manager, bookkeeper, and office manager, but could not work as an

25    auto rental clerk and dental scheduler.  *Id.*  When the ALJ asked if a person with the same

26    limitations but "a reduced ability to stand and walk up to a total of four hours" could perform the

27    same positions, the expert responded the person could still work as an office helper, as well as a

28    parts assembler, mail clerk, and sorter.  Finally, the ALJ asked about the same person but "limited

United States District Court
Northern District of California

to lifting and carrying ten pounds occasionally and less than ten pounds frequently, they could sit for six or more hours but were limited to standing and/or walking up to two hours total."  AR 79. The expert testified the person could still work as a scheduler and bookkeeper, and could also work as an order clerk, appointment setter.  AR 79-80.

Based on the expert's testimony, the ALJ found that an individual with Plaintiff's RFC and other vocational factors could perform the requirements of her past relevant work.  AR 29-30.

Plaintiff argues "the vocational witness testimony in response to the ALJ's hypothetical was of no evidentiary value" because it did not include "exertional and non-exertional limitations related to her spinal impairments."  Pl.'s Mot. at 9-10.

### 1.  Legal Standard

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ's reliance on qualified, cogent, and uncontradicted expert testimony generally constitutes substantial evidence in support of an ALJ's finding.  *See Ford*, 950 F.3d at 1159.

### 2.  Analysis

Plaintiff does not specify which limitations the ALJ failed to include, other than generally referring to exertional and non-exertional limitations related to her spinal impairments.  "However, there is no requirement for the RFC to include those limitations the ALJ found to be unsupported by the evidence of record."  *Pamela M. v. Kijakazi*, 2021 WL 4461546, at *13 (N.D. Cal. Sept. 29, 2021) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (reasoning the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper"); *Rollins*, 261 F.3d at 857 ("The omitted limitations, however, were only those that the ALJ found did not exist.  Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by

United States District Court
Northern District of California

substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove."). Here, the ALJ's hypothetical questions contained limitations she found were supported by substantial evidence (*compare* AR 20 (RFC assessment) with AR 76-80 (hypothetical questions)). Rather than cite to any medical evidence in the record that shows otherwise, Plaintiff appears to rely on her subjective testimony regarding her back impairments. However, as discussed above, the ALJ articulated several legally sufficient reasons for finding Plaintiff's subjective testimony inconsistent with the evidence of record. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, Stubbs–Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not."). As such, the ALJ's decision must be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**


Dated: October 14, 2025


THOMAS S. HIXSON
United States Magistrate Judge

22